# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **ARLEY LEE DUNCAN,** | ) |
| Petitioner, | ) ) ) |
| v. | ) Case No. CIV 15-474-JHP-KEW ) |
| **JOE M. ALLBAUGH, DOC Director,** | ) ) |
| Respondent. | ) |

## OPINION AND ORDER

This action is before the Court on Respondent's motion to dismiss Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 as barred by the statute of limitations (Dkt. 12). Petitioner, a pro se prisoner in the custody of the Oklahoma Department of Corrections, is incarcerated at Davis Correctional Facility, a private prison in Holdenville, Oklahoma. He is challenging the execution of his life sentence imposed in Oklahoma County District Court Case No. CRF-83-3116 for First Degree Murder. Petitioner raises four grounds for relief:

> Ground I: Petitioner's agreement for entry of a guilty plea has been rendered void as a result of grievous breaches of contract perpetrated by the very prosecutor who tendered the agreement, as well as subsequent office holders and the State of Oklahoma.
>
> Ground II: Retroactive application of laws enacted after Petitioner's plea agreement have violated his rights under the agreement made and altered the administration and execution of his sentence, creating a liberty interest protected by the U.S. Constitution.
>
> Ground III: Void plea due to fact Petitioner entered his plea without being fully or properly informed of the facts available to his attorney.
>
> Ground IV: Plea is invalid due to ineffective assistance of counsel.

The respondent alleges the petition was filed beyond the one-year statute of limitations imposed by the Antiterrorism and Effective Death Penalty Act of 1996, codified

at 28 U.S.C. § 2244(d) (AEDPA). Because of Petitioner's lengthy history of litigation of his conviction and sentence, Respondent has set forth the information relevant to the habeas petition:

**09/27/1983** Petitioner, represented by counsel, entered into a negotiated plea of guilty to the crime of First Degree Murder in Oklahoma County District Court Case No. CRF-1983-3116. (Dkt. 13-1). Judgment and Sentence were imposed after Petitioner agreed to be, and was, sentenced to life imprisonment. (Dkt. 13-2).[1] He did not seek a direct appeal or seek to withdraw his plea within the applicable time period.

**03/08/1995** Petitioner filed his first application for post-conviction relief in the trial court, challenging the voluntariness of his guilty plea and the effectiveness of his counsel. (Dkt. 13-3). He raised the following claims: (1) Petitioner was inadequately advised of his right to appeal the guilty plea, because he was not informed that if he did file an appeal, counsel and a record of the proceedings would be provided at no cost to him; (2) counsel for his plea was ineffective in not assisting Petitioner with an appeal of his guilty plea; and (3) Petitioner's guilty plea was involuntary and coerced, because he allegedly received threats of the death penalty if he did not enter the plea, notwithstanding the lack of any evidence of aggravating circumstances. (Dkt. 13-3 at 2).

**05/03/1995** The state trial court denied the post-conviction application. (Dkt. 13-3), finding Petitioner's negotiated plea for a sentence of life imprisonment was voluntary. The trial court further found Petitioner was fully advised of "each of his constitutional rights before the guilty plea," and that at the time of the plea, "Petitioner advised the court that he

---

[1] At the time of Petitioner's sentencing in 1983, Oklahoma had only two punishments for Murder in the First Degree: "death, or by imprisonment for life." Okla. Stat. tit. 21, § 701.9(A) (1981). Effective November 1, 1987, the sentencing options were modified to "death, by imprisonment for life without parole or by imprisonment for life." Okla. Stat. tit. 21, § 701.9 (Supp. 1987).

understood each and every one of his rights." When the trial court asked Petitioner "if anyone had exerted any pressure of any kind to coerce him to enter his plea," Petitioner answered, "No sir." The trial court noted that Petitioner had acknowledged his understanding that a motion to withdraw his guilty plea had to be initiated within ten (10) days. However, Petitioner chose to waive his right to remain in the county jail for ten days and to be processed into the Department of Corrections as quickly as possible. (Dkt. 13-3 at 2). With respect to the withdrawal of Petitioner's plea, the trial court noted that Petitioner "has waited over eleven years to raise this particular issue." The trial court further found:

> There is no evidence in the record that Petitioner was coerced in any way to enter a plea of guilty to the charge of Murder in the First Degree without the Bill of Particulars. It is obvious from the record that the withdrawal of the Bill of Particulars inured to the benefit of the Petitioner and not to his detriment.

(Dkt. 13-3 at 3). Petitioner also was advised of the method and time period to appeal the ruling. *Id.*

**06/02/1995** Petitioner attempted to appeal the trial court's denial of his first post-conviction application. (Dkt. 13-4). In his Petition in Error to the Oklahoma Court of Criminal Appeals (OCCA), he asked the court "to reverse and remand with instructions to allow [him] to plead anew." (Dkt. 13-4 at 16). Petitioner reiterated his three claims raised in the trial court and complained he had not been allowed an evidentiary hearing. (Dkt. 13-4 at 3). He included affidavits from himself and family members that stated Petitioner wanted to appeal his guilty plea and set forth the attempts made to contact plea counsel concerning an appeal. (Dkt. 13-4 at 25-27).

**06/29/1995** The OCCA dismissed Petitioner's attempted appeal of the trial court's ruling in Case No. PC-95-573, because he failed to follow appellate rules requiring attachment of a certified copy of the trial court's written order. (Dkts. 13-5, 13-6).

**09/15/1995** The OCCA denied Petitioner's petition for rehearing in Case No. 95-

573, because the OCCA's procedural rules did not permit rehearing from a final order in a post-conviction proceeding. (Dkt. 13-7).

**04/24/1996** Petitioner's one-year limitations period in which to file a petition for a writ of habeas corpus began to run pursuant to the AEDPA, absent any tolling.

**04/24/1997** Petitioner's statutory year within which to file a habeas corpus petition expired without any statutory tolling.

**08/17/1998** Petitioner filed his first petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in the Northern District of Oklahoma, Case No. 98-CV-621-H. (Dkt. 13-8). The petition was transferred to the Western District of Oklahoma pursuant to 28 U.S.C. § 2241(d) for review, and it was renumbered to Case No. CIV-98-1226-A. Petitioner's sole claim was that Oklahoma's newly-enacted "Truth in Sentencing Act" (the Act) should have been retroactively applied to him, and not doing so violated his rights to Equal Protection and Due Process. Petitioner argued he was entitled to the more determinate sentence of 18 to 60 years' imprisonment, because he had received the minimum sentence for Murder in the First Degree at the time of his guilty plea, and his proposed sentence range was the minimum penalty offered to first degree murderers under the Act.[2] (Dkt. 13-8 at 12-13). Petitioner requested relief in the form of a "Remedial Order resentencing [him] pursuant to the new sentencing guidelines" or a "Remedial Order resentencing [him] to the minimum sentence of Eighteen (18) years pursuant to [the Act], and ordering [his] immediate discharge and release from custody. . . ." (Dkt. 13-8 at 19).

**11/25/1998** The Western District Court dismissed Petitioner's first federal habeas

---

[2] The OCCA already had held that the sentencing matrix portion of the Act did not apply retroactively, other than to determine eligibility for parole. *Nestell v. State*, 954 P.2d 143, 144-45 (Okla. Crim. App. 1998). This portion of Oklahoma's sentencing laws was repealed on July 1, 1999, before taking effect. Truth in Sentencing--Repealer, ch. 5, § 452, 1999 Okla. Sess. Laws 2328, 2535.

4

corpus petition, finding he had raised non-cognizable issues concerning only issues of state sentencing law, and he was not similarly situated to those who committed the same crime after the Act's effective date. Therefore, Petitioner's rights to due process and equal protection were not violated. Petitioner also was denied a certificate of appealability. (Dkts. 13-9, 13-10 at 7-8).

**03/01/1999** Petitioner appealed to the Tenth Circuit Court of Appeals in Case No. 99-6029 (Dkt. 13-11). He argued that the district court had erred in finding no constitutional violation regarding the application of Oklahoma's Truth in Sentencing Act to him. (Dkt. 13-12).

**11/08/1999** The Tenth Circuit procedurally terminated the appeal and denied a certificate of appealability. (Dkt. 13-13).

**07/06/2001** Petitioner filed a second application for post-conviction relief in the trial court, raising claims that: (1) The trial court failed to properly inquire into his competency to enter the plea in 1983, and his competency was determined under an unconstitutional standard; (2) Preliminary hearing testimony established that the murder charge was excessive and unjustified, because Petitioner either acted in self-defense or while in the heat of passion, and he therefore could not be guilty of murder in the first degree; (3) Trial counsel was ineffective. (Dkt. 13-14 at 2).

**11/26/2001** The trial court issued written Findings of Fact and Conclusion of Law, denying Petitioner's second post-conviction application. The court found Petitioner had waived all issues to the extent they could have been, but were not, raised on direct appeal or in his first application for post-conviction relief. To the extent the issues were raised previously, they were barred by res judicata. Petitioner's arguments regarding the voluntariness of his guilty plea were meritless, because the record showed the trial court

followed the appropriate procedures for accepting Petitioner's guilty plea, and the trial court "went to great lengths to ensure that Petitioner was mentally competent and that his plea was knowingly and voluntarily entered." The trial court further found that "Petitioner's attempt to challenge the validity of the crime with which he was charged [was] frivolous." Also, Petitioner's claim of ineffective assistance of trial counsel failed, because he had not established unreasonable performance or resulting prejudice pursuant to *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). (Dkt.13-14 at 3-4).

**12/18/2001** Petitioner appealed the trial court's denial of his second post-conviction application, raising the same three claims that were raised in the trial court. He included an argument that Oklahoma's "Make My Day" law,[3] which permits the use of deadly force in one's home against an intruder, constituted an intervening change in the law that should be applied retroactively to him. He asked the OCCA to reverse and remand his case, or in the alternative, issue an order reducing his charge to a lesser-included offense and release him for time served. (Dkt. 13-15).

**02/01/2002** The OCCA affirmed the denial of Petitioner's second application for post-conviction relief in Case No. PC-2001-1480. The court found that Petitioner's claims could and should have been raised in either a direct appeal of his guilty plea or in his first post-conviction application, and to that extent, the claims were waived. Petitioner's claims that previously were raised in prior proceedings were barred by res judicata. With respect to Petitioner's competency claims, the OCCA found:

> Petitioner now attempts to claim he was not competent to enter his guilty plea. Petitioner has not established, and the record does not reflect, that any doubt as to his competence was ever raised during trial proceedings, or that he was ever subjected to a competency hearing or the legal standards utilized therein. . . . Petitioner does not offer any evidence of material facts, not previously

---

[3] *See* Okla. Stat. tit. 21, § 1289.25 (Supp. 1995).

presented and heard, which would indicate he might have been incompetent during trial court proceedings.

(Dkt. 13-16 at 2).

**09/13/2002** Petitioner filed a motion with the Tenth Circuit for leave to file a second or successive habeas corpus petition pursuant to 28 U.S.C. § 2244(b). He submitted three grounds he wanted to present to the federal district court: (1) Based upon evidence supporting his insanity at the time of the murder, a proper inquiry into and a determination of Petitioner's competency to enter his plea never was conducted; (2) Petitioner was actually innocent of the murder, because he was overcharged, and the preliminary hearing testimony demonstrated he acted in self-defense; (3) Petitioner's trial counsel was ineffective in (a) not exploring and raising Petitioner's sanity at the time of the murder and his mental competence to enter a guilty plea, (b) coercing Petitioner into pleading guilty; (c) not assisting Petitioner in withdrawing his plea, and (d) not advising Petitioner about how much time he would serve, and what could be done to get Petitioner released and the charges dismissed. (Dkts. 13-17 at 31-36, 13-18).

**10/01/2002** The Tenth Circuit Court of Appeals denied Petitioner authorization to proceed with a second and successive habeas petition in Case No. 02-6291. (Dkt. 13-19). Petitioner filed another motion to file a successive petition on **11/02/2002**, which the Circuit Court construed as a petition for rehearing in Case No. 02-6291. (Dkts. 13-20, 13-21, 13-22). On **12/12/2002**, the Tenth Circuit again denied authorization, and the case was administratively closed in Case No. 02-6377. (Dkt. 13-23).

**02/03/2009** Petitioner filed in the trial court a petition for a writ of mandamus pursuant to Okla. Stat. tit. 12, § 1451 (2001), alleging his due process right to a fair parole hearing was being denied by the Oklahoma County District Attorney. (Dkt. 13-24). He claimed that documents sent to the Oklahoma Pardon and Parole Board contained

questionable and unsupported content. The disputed documents were the District Attorney's Narrative Report concerning Petitioner's crime, and two letters written by Robert H. Macy, former Oklahoma County District Attorney. (Dkt. 13-24 at 2). Petitioner submitted to the trial court his own narrative report about the crime and information supporting the commutation of his sentence or his parole. (Dkt. 13-24 at 26-32). Petitioner further alleged in his mandamus petition that:

(1) The statute requiring the district attorney to prepare a Narrative Report, Okla. Stat. tit. 19, § 215.39 (Supp. 1983), which went into effect approximately a month after his guilty plea, was an ex post facto law that was unconstitutionally applied to him.

(2) The Narrative Report in Petitioner's case was not used for its intended purpose, but instead to create extreme bias and discrimination against him every time he has a hearing before the Pardon and Parole Board. The report includes inaccurate and irrelevant facts about the murder, including a statement that he had stalked his victim, that Petitioner was "estranged" from his wife, and that the victim was an off-duty police officer.

(3) Macy's letters were sent to the Pardon and Parole Board in bad faith and were incorrect and unsupported by any evidence. Oklahoma law has never authorized a prosecutor to testify in a parole hearing or to provide documentation other than a Narrative Report. Further, by considering Macy's letters, the Parole Board members effectively entered into a conspiracy to deprive Petitioner of due process and equal protection. (Dkt. 13-24 at 3-13).

Petitioner sought relief in the form of an order compelling the office of the Oklahoma County District Attorney to contact the Pardon and Parole Division of the Oklahoma Department of Corrections and have the disputed Narrative Report and letters by Robert Macy removed from any and all files. (Dkt. 13-24 at 14). Petitioner further asked for reparations for the irreversible damage that has resulted from the documents, as well as

commutation of his sentence to time served or to a sentence of 45 years. (Dkt. 13-24 at 14-15).

**05/04/2009**   The trial court dismissed with prejudice the petition for writ of mandamus, finding Petitioner's claim was meritless, because the district attorney had the statutory right and discretion to submit the documents. Further, "[a] writ of mandamus cannot issue to prevent an officer from performing his statutory duty and from performing a discretionary act in compliance with the duties of his office." (Dkt. 13-25 at 1).

**06/22/2010**   The Oklahoma Court of Civil Appeals affirmed the trial court's denial of a writ of mandamus in Case No. 107,152. The Court rejected Petitioner's ex post facto argument, finding Okla. Stat. tit. 19, § 215.39 was prospective in nature and "did not provide the first or only authority for a narrative report or other documentation to be prepared and submitted by a district attorney at any time." (Dkt. 13-26 at 7-9). The statute made the narrative report "mandatory in every case." *Id*. at 10. Further, "there is no protectible liberty interest in an Oklahoma parole, because it affords no more than an expectation (or hope) of parole." (Dkt. 13-26 at 9 n.11). Petitioner did not perfect an appeal of this ruling to the Oklahoma Supreme Court.

**11/03/2010**   Petitioner filed a third application for post-conviction relief in the trial court, seeking to file a direct appeal of his 1983 guilty plea out of time and raising three claims:

(1)  Because trial counsel was ineffective in failing to initiate appellate proceedings following the guilty plea, Petitioner is entitled to an appeal out of time to challenge the plea.

(2)  Petitioner's guilty plea was not knowing and voluntary, because he was unaware at the time of his plea that the State was not seeking the death penalty.

(3)  When Petitioner came up for parole consideration, the State breached the terms

9

of his plea agreement by objecting to his parole through letters to the Parole Board and through a factually inaccurate narrative of the crime.

(4) Petitioner received ineffective assistance of counsel. (Dkt. 13-27 at 2).

**01/05/2011** The trial court denied Petitioner's third post-conviction application. The trial court found Petitioner was attempting to raise issues that could have been raised on appeal but were not; therefore, the issues were waived. Furthermore, the third application raised previously litigated issues that were barred by the doctrine of res judicata. The court specifically found that his claim concerning the prosecutor's objections to his parole was unsupported by legal authority, and the claim could have been raised in either of Petitioner's two previous post-conviction applications. Finally, Petitioner was not entitled to an appeal out of time, because he had not established that a direct appeal of his guilty plea had been denied through no fault of his own. (Dkt. 13-27 at 2-3).

**01/28/2011** The OCCA affirmed the trial court's denial of Petitioner's third post-conviction application in Case No. PC-2011-62. (Dkt. 13-29). The OCCA found that "[a]ll legal issues previously raised and ruled upon were res judicata," and all other claims were waived, because Petitioner could have, but did not, raise them earlier. *Id.* at 2. The OCCA further found that Petitioner had not demonstrated that a timely direct appeal of his guilty plea was denied through no fault of his own. *Id*. Finally, the Court warned Petitioner that "[s]ubsequent application on any of these issues is **BARRED**." *Id*. (emphasis in original).

**04/09/2015** Petitioner next filed a state petition for a writ of habeas corpus in Hughes County District Court in Case No. CV-15-22, claiming his confinement was illegal and unauthorized. (Dkt. 13-20).[4] He raised four claims, all of which were substantially

---

[4] Petitioner apparently believed the petition should be filed in the county where he was incarcerated.

10

identical to those brought in this federal habeas action and in some of his prior state actions:

(1) The 1983 plea agreement was breached, when the district attorney wrote to the State Parole Board and objected to Petitioner's release. Also, changes in Oklahoma law over the past three decades made it more difficult for him to be paroled. (Dkt. 13-30 at 6-22).

(2) The retroactive application of intervening changes in Oklahoma law after Petitioner entered his guilty plea altered his "expected parole process." (Dkt. 13-30 at 22-34).

(3) Petitioner's guilty plea was not knowing, intelligent, and voluntary, because the prosecutor's reason for not seeking the death penalty was not because Petitioner agreed to plead guilty. The actual reason was the health of the victim's family members, and Petitioner never was so advised. (Dkt. 13-30 at 35-43).

(4) Counsel was ineffective in not informing Petitioner that the death penalty would not be sought if Petitioner went to trial. (Dkt. 13-30 at 43-49).

Petitioner also filed several motions he claimed were related to his petition. Respondent moved to dismiss the petition and the motions, because Petitioner had filed the action in the wrong forum, and because all of Petitioner's claims were procedurally barred by state law. (Dkt. 13-31).

**08/07/2015** The Hughes County District Court summarily dismissed Petitioner's habeas corpus petition and related motions (Dkt. 13-32). Petitioner did not re-file the state habeas petition or the motions in the proper state forum.

**08/31/2015** Petitioner attempted to appeal the Hughes County District Court's order dismissing his state habeas petition and related motions to the OCCA in Case No. HC-2015-761. (Dkt. 13-33).

**09/09/2015** The OCCA found Petitioner' state habeas petition was not proper,

11

because it did not fit within the narrow parameters within which habeas corpus relief lies. Instead, Petitioner must challenge his Judgment and Sentence through post-conviction procedures. Therefore, the OCCA interpreted Petitioner's filing as an application for extraordinary relief and denied the application. (Dkt. 13-34).

**12/04/2015**   Petitioner filed this federal petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2241. (Dkt. 1).

**Statute of Limitations**

> Respondent alleges this petition is time barred pursuant to the AEDPA:
>
> (1)  A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
>
> (A)  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B)  the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C)  the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D)  the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2)  The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).  The one-year limitations period also applies to § 2241 habeas corpus actions. *Burger v. Scott*, 317 F.3d 1133, 1138 (10th Cir. 2003).

Petitioner's Judgment and Sentence was entered on September 27, 1983. He did not seek to timely withdraw his plea or seek a direct appeal to the Oklahoma Court of Criminal Appeals. Therefore, the conviction became final on October 7, 1983, ten days after entry of

the Judgment and Sentence. *See* Rule 4.2, *Rules of the Court of Criminal Appeals*, Okla. Stat. tit. 22, Ch.18, App.; Okla. Stat. tit. 22, § 1051. Because the conviction became final before enactment of the AEDPA, Petitioner had until April 24, 1997, to initiate this habeas corpus action. *See United States v. Hurst*, 322 F.3d 1256, 1261 (10th Cir. 2003); *Hoggro v. Boone*, 150 F. 3d 1223, 1226 (10th Cir. 1998). This petition, filed on December 4, 2015, was untimely.

Pursuant to 28 U.S.C. § 2244(d)(2), the statute of limitations is tolled while a properly-filed application for post-conviction relief or other collateral review of the judgment at issue is pending. Petitioner's first post-conviction proceedings were concluded prior to enactment of the AEDPA, and his second and third post-conviction applications were initiated after his April 24, 1997, deadline. The second and third attempts to obtain post-conviction relief before the state courts cannot serve to toll an already expired statute of limitations. *See May v. Workman*, 339 F.3d 1236, 1237 (10th Cir. 2003). Furthermore, the pendency of Petitioner's § 2254 habeas petition, filed on August 17, 1998, after the limitations period expired, did not toll the statute of limitations under 28 U.S.C. § 2244(d)(2). *See Duncan v. Walker*, 533 U.S. 167, 181-82 (2001).

This petition may be saved only if Petitioner can demonstrate that the limitations period began later than April 24, 1996. *See Chavez v. Workman*, No. CV-05-554-HDC-PJC, 2006 WL 2251718, at *3 (N.D. Okla. Aug. 4, 2006) (holding that habeas petitioner bears the burden of showing the statute of limitations runs from the date the factual predicate for claim is discovered), *aff'd,* 207 Fed. Appx. 924, 2006 WL 3530663 (10th Cir. Dec. 8, 2006), *cert. denied*, 550 U.S. 959 (2007). Petitioner, however, does not allege that some "impediment to filing an application created by State action in violation of the Constitution or laws of the United States," now since removed, prevented him from filing this petition , and that he has

13

filed the petition within one year of that removal. See 28 U.S.C. § 2244(d)(1)(B). Nor does he argue that his claims are based upon a new constitutional right recognized by the United States Supreme Court and retroactively applicable to cases on collateral review, and that he filed this petition within one year of that Supreme Court decision. See 28 U.S.C. § 2244(d)(1)(C).

Therefore, Petitioner may proceed only if he can demonstrate this petition was filed within one year of "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D). For purposes of § 2244(d)(1)(D), "[t]he 'due diligence' clock starts ticking when a person knows or through diligence could discover the vital facts, regardless of when their legal significance is actually discovered." *Ford v. Gonzalez*, 683 F.3d 1230, 1235 (9th Cir. 2012); *Klein v. Franklin*, No. 11-6111, 437 Fed. Appx. 681, 684, 2011 WL 3701892, at *2 (10th Cir. Aug. 24, 2011) (unpublished) ("[T]he limitations period begins to run when the petitioner knows of the facts giving rise to the habeas claim; it is not required that he or she understand the legal significance of those facts.") (citing *Preston v. Gibson*, 234 F.3d 1118, 1120 (10th Cir. 2000)). Thus, the triggering date for the statute of limitations, is when the predicate facts supporting his claims "could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D). It is not when Petitioner discovered the potential legal impact of those facts on his particular case. As set forth below, for many years the facts upon which Petitioner relies to make his current claims either have been known by him, or could have been discovered through due diligence. Consequently, the petition is time-barred.

**Ground I:** Petitioner alleges his 1983 guilty plea has been "rendered void," because the State breached its plea agreement. In support of this claim, Petitioner cites the Narrative Report of the crime and the letters from former Oklahoma County District Attorney Robert

14

Macy contesting Petitioner's parole. Petitioner claims these documents that were sent to the Parole Board are inaccurate. He also contends that by entering into his guilty plea, the State agreed that Petitioner would be paroled, not that he could be paroled. (Dkt. 1 at 5). The letters, narrative report, and procedural changes after the plea have frustrated Petitioner's expected release date.

Petitioner asserts "[t]he D.A. agreed to the sentence of 'life with parole' and no involvement in the parole process." (Dkt. 1 at 8). Respondent, however, alleges that Petitioner misunderstands the sentence he is serving. At the time of Petitioner's crime, as is presently the case, Oklahoma had no sentence of "life with parole" for murder in the first degree. The sentence options available in 1983 were "death, or by imprisonment for life." Okla. Stat. tit. 21, § 701.9(A) (1981). Those sentencing options were modified in 1987 to "death, by imprisonment for life without parole, or by imprisonment for life." Okla. Stat. tit. 21, § 701.9 (Supp. 1987). Although Petitioner now has the possibility of parole for his crime, his actual sentence was not "life with parole." It was "imprisonment for life," as set forth in Petitioner's "Time to Serve, Plea of Guilty, Summary of Facts," which reads "Plead to 1 count of Murder and receive a life sentence." (Dkt. 13-1 at 2).

Petitioner admits in his petition that the prosecutor's letters to the Parole Board "were discovered (approx. 2005)" by Petitioner's family and perhaps by Petitioner himself. (Dkt. 1 at 23). Thus, Petitioner could have, and likely did, become aware of the letters a decade before he filed this petition. He also knew the contents of the prosecutor's Narrative Report by at least 2005, as evidenced by Petitioner's inclusion of a letter dated November 4, 2005, from the General Counsel for the Parole Board. (Dkt. 1-1 at 4). This letter noted that the Narrative Report was intended to present the prosecutor's view of the murder and that purpose already had been explained to Petitioner and his supporters. *Id.* Furthermore,

Petitioner clearly was aware of changes in the parole procedure as early as 1987. He states in the petition that when he entered into state custody, prisoners were afforded annual parole reviews, but "the policy regarding frequency of parole was altered just prior to Petitioner's hearing in 1987." (Dkt. 1 at 8). Therefore, Petitioner knew of the parole policy changes and the effect it had on him as early as 1987, and he could have raised his current challenges many years ago.

In addition, on February 3, 2009, Petitioner petitioned the state trial court for a writ of mandamus to force the removal of these documents from his parole file, because they had a negative effect on his opportunity for parole. (Dkt. 13-24 at 2-3). There is no question whether Petitioner knew of the facts underlying his claim in Ground I of this petition at least by 2005, and certainly no later than February 2, 2009. Ground I of this petition is barred by the statute of limitations.

**Grounds II, III, and IV:** Respondent alleges the bases of Petitioner's remaining grounds for habeas relief likewise were available to him by November 3, 2010, at the latest, when he filed his third application for post-conviction relief in the trial court. Petitioner raised almost identical arguments in the post-conviction application as those presented in this habeas petition. His appeal to the OCCA after the trial court denied the third post-conviction action clearly shows his knowledge of the factual bases underlying all his habeas corpus grounds for relief.

In Ground II of this petition, Petitioner alleges that the retroactive application of parole policies, including the submission of a Narrative Report by the prosecutor, violates the prohibition against ex post facto laws and increases the likelihood he will not receive the agreed parole consideration. Petitioner argues these changes violate the parole terms that his attorney explained to him, as well as the law and procedures that were in effect at the time

16

of his plea. (Dkt. 1 at 5, 17-18).

As in his third post-conviction application, Petitioner claims the prosecutor breached the plea agreement by writing letters and submitting the Narrative Report to the Parole Board, thereby undermining, impeding, and prejudicing the parole process the prosecutor "held out to Petitioner under prevailing law and process at the time of the offer." (Dkt. 13-28 at 18). Therefore, when Petitioner filed his third post-conviction application on November 3, 2010, he possessed basic knowledge of ex post facto principles relating to how his parole hearings were conducted.

Petitioner argues in Ground III of the petition that his guilty plea is void, because he was not advised that the prosecutor's reason for not seeking the death penalty was that the members of the victim's family were in poor health. Petitioner claims he was told the death penalty had been dropped only after he decided to enter a guilty plea. He contends he would have gone to trial and would not have agreed to a plea, if his counsel had not used the threat of the death penalty to persuade him to accept the plea agreement. (Dkt. 1 at 22). He also alleges his plea is void, because he never was properly informed about the parole process and that parole is discretionary. Instead, Petitioner asserts the expectation given by counsel and the prosecutor was that "he would be released in no more than seven (7) years" if sentenced to life imprisonment. (Dkt. 1 at 23). Petitioner's counsel allegedly admitted that he deceived Petitioner into accepting the plea arrangement, because Macy had threatened to prosecute Petitioner's counsel, if counsel did not persuade Petitioner to accept the guilty plea for a life sentence with parole. *Id.*

Petitioner admits that Macy's letters revealing this information were available him in "approx. 2005." *Id.* He also admits that "[t]he 1987 parole hearing had surprised him, and when the board set him off until his 1998 date, he was equally surprised" *Id.* at 23-24.

Because Petitioner had Macy's letters in 2005 and knew by 1998 that he would serve more than seven years, the factual predicate supporting Ground III was available to him no later than 2005. Ground III of the petition also is time-barred.

In Ground IV, Petitioner alleges his 1983 guilty plea was invalid because of the ineffective assistance of counsel, and he is being held on a void conviction. *Id*. at 25-26. He specifically claims he was misled about the reason the death penalty was not sought in his case, and as in Ground III, he claims defense counsel's acts and omissions resulted in his being coerced into pleading guilty. He also maintains that if he had gone to trial without the possibility of a death sentence, he could not have received a greater sentence than the sentence he received from the plea. *Id.* at 26-28.

The record shows Petitioner has known the predicate facts forming this claim for many years. As discussed above, he admits that as early as 2005, he knew about Macy's letters to the Parole Board which disclosed an alternate reason for not taking Petitioner's case to trial. *Id.* at 23. Petitioner, nonetheless, waited until February 3, 2009, to seek a petition for a writ of mandamus through the civil courts of Oklahoma to attempt to force the removal of the letters and the Narrative Report from his parole file. (Dkt. 13-24). Ground IV also is barred by the statute of limitations.

**Equitable Tolling**

Petitioner carries the burden of establishing equitable tolling. *Yang v. Archuleta*, 525 F.3d 925, 929 (10th Cir. 2008). Generally, equitable tolling requires a litigant to establish two elements: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Lawrence v. Florida*, 549 U.S. 327, 336 (2007) (citation omitted). Petitioner, however, has failed to allege or argue equitable tolling.

**Certificate of Appealability**

18

The Court finds Petitioner has failed to make a "substantial showing of the denial of a constitutional right," as required by 28 U.S.C. § 2253(c)(2). In addition, he has not shown "at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether [this] court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Therefore, a certificate of appealability cannot be issued.

**ACCORDINGLY,** Respondent's motion to dismiss time-barred petition (Docket No. 12) is GRANTED, and all remaining pending motions are DENIED as moot. Petitioner also is DENIED a certificate of appealability.

**IT IS SO ORDERED** this 24th day of March 2017.

James H. Payne
United States District Judge
Eastern District of Oklahoma